CRAIG CARPENITO
United States Attorney
ALLAN B. K. URGENT
JESSICA O'NEILL
Assistant United States Attorneys
970 Broad Street, Suite 700
Newark, NJ 07102
Tel.: (973) 645-2700
Fax:  (973) 297-2010

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | : |
|  | : |
| Plaintiff, | : |
|  | : |
| v. | : Civil Action No. 19-_____ |
|  | : |
| THOMAS J. BYRD, JR., | : |
|  | : |
|  | : **COMPLAINT** |
| Defendant. | : |

The United States of America ("United States"), by the authority of the

Attorney General, and at the request of the U.S. Army Corps of Engineers

("USACE"), alleges as follows:

### NATURE OF THE ACTION

1.     This is a civil action commenced under Section 309(b) and (d) of the

Clean Water Act ("CWA"), 33 U.S.C. § 1319(b) and (d) and Section 17 of the Rivers

and Harbors Act of 1899 ("RHA"), 33 U.S.C. § 413.  The United States seeks

injunctive relief and civil penalties against Defendant Thomas J. Byrd, Jr. ("Byrd")

for violations of CWA Section 301, 33 U.S.C. § 1311, for the discharge of pollutants,

in the form of dredged or fill material, into waters of the United States on property

1

identified as Block 8202, Lot 4, and Block 8301, Lots 1 and 2, in Egg Harbor Township, Atlantic County, New Jersey, without a permit issued pursuant to CWA Section 404, 33 U.S.C. § 1344.  The United States also seeks injunctive relief against Byrd for a violation of RHA Section 10, 33 U.S.C. § 403, for creating an obstruction to the navigable capacity of and altering navigable waters of the United States in Egg Harbor Township, Atlantic County, New Jersey, without a permit issued pursuant to 33 CFR § 322.3.

2.      In this action, the United States seeks: (1) to enjoin the discharge of pollutants into waters of the United States without a permit in violation of CWA Section 301(a), 33 U.S.C. § 1311(a); (2) to require Byrd to comply with the requirements of the CWA and its implementing regulations; (3) to require Byrd, at his own expense and at the direction of USACE, to restore the waters of the United States; (4) to require Byrd, at his own expense and at the direction of USACE, to remove the obstruction to the navigable capacity of the waters of the United States; (5) to require Byrd to comply with the requirements of the RHA and its implementing regulations; and (6) to require Byrd to pay civil penalties as provided in CWA Section 309(d), 33 U.S.C. § 1319(d).

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to CWA Section 309(b), Section 33 U.S.C. § 1319(b), RHA Section 12, 33 U.S.C. § 406, and 28 U.S.C. §§ 1331, 1345, and 1355.

4.      Venue is proper in the United States District Court for the District of New Jersey pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. § 1391(b) and (c), because Byrd resides in the District, the subject property is located in the District, and the cause of action alleged herein arose in the District.  Venue is also proper in the United States District Court for the District of New Jersey pursuant to RHA Section 12, 33 U.S.C. § 406, because the structure obstructing the navigable capacity of waters of the United States exists in the District.

5.      Notice of commencement of this action has been provided to the State of New Jersey pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b).

## THE PARTIES

6.      The Plaintiff in this action is the United States of America.  Authority to bring this action is vested in the United States Department of Justice pursuant to 28 U.S.C. §§ 516 and 519, 33 U.S.C. § 1366, and 33 U.S.C. § 413.

7.      Byrd is an individual who resides at 1325 Mays Landing/Somers Point Road, Egg Harbor Township, Atlantic County, New Jersey.

8.      Byrd is a "person" within the meaning of CWA Section 502(5), 333 U.S.C. § 1362(5).

9.      At all times relevant to this Complaint, Byrd either owned or otherwise controlled and/or controlled all activities relevant to this Complaint that occurred on the real property that is the subject of this Complaint.

## STATUTORY BACKGROUND

10.     CWA Section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of pollutants into navigable waters except in compliance with, inter alia, a permit issued pursuant to CWA Section 404, 33 U.S.C § 1344.

11.     CWA Section 404(a), 33 U.S.C. § 1344(a), authorizes the Secretary of the Army, acting through the Chief of Engineers, to issue permits for the discharge of dredged or fill material into navigable waters at specified disposal sites, after notice and opportunity for public comment.

12.     CWA Section 502(12), 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

13.     CWA Section 502(6), 33 U.S.C. § 1362(6), defines "pollutant" to include, inter alia, dredged spoil, rock, sand, dirt, and biological materials.

14.     CWA Section 502(7), 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of the United States, including the territorial seas."

15.     33 C.F.R. § 328.3(a)(1), (2), (5) and (7), and 40 C.F.R. § 232.2, define "waters of the United States" to include: (i) all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters that are subject to the ebb and flow of the tide; (ii) all inter-state waters; (iii) tributaries to such waters; and (iv) wetlands adjacent to such waters and their tributaries.

16.     33 C.F.R. § 328.3(b), and 40 C.F.R. §§ 122.2 and 232.2, define "wetlands" as "those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions."

17.     CWA Section 502(14), 33 U.S.C. § 1362(14), defines "point source" to include "any discernable, confined and discrete conveyance . . . from which pollutants are or may be discharged, including but not limited to any pipe, conduit, or container."

18.     CWA Section 502(5), 33 U.S.C. § 1362(5), defines "person" to include "an individual."

19.     CWA Section 309(b), 33 U.S.C. § 1319(b), authorizes the commencement of a civil action for appropriate relief, including a permanent or temporary injunction, against any person who violates CWA Section 301(a), 33 U.S.C. § 1311(a).

20.     CWA Section 309(d), 33 U.S.C. § 1319(d), authorizes the commencement of an action for civil penalties against any person who violates the CWA Section 301(a). Each day that fill material remains in the place where it was discharged without authorization constitutes a separate violation of CWA Section 301(a), 33 U.S.C. § 1311(a).

21.    RHA Section 10, 33 U.S.C. § 403, prohibits the creation of any obstruction not affirmatively authorized by Congress to the navigable capacity of any of the waters of the United States.

22.    RHA Section 10, 33 U.S.C. § 403, provides that it is not lawful to "build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army."

23.    RHA Section 10, 33 U.S.C. § 403, provides that it "shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, or capacity of, any port, roadstead, haven, harbor, canal, lake, harbor or refuge, or enclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army."

24.    33 C.F.R. § 322.2 defines "structure" as including, without limitation, "any pier, boat dock, boat ramp, wharf, dolphin, weir, boom, breakwater, bulkhead, revetment, riprap, jetty, artificial island, artificial reef, permanent mooring structure, power transmission line, permanently moored floating vessel, piling, aid to navigation, or any other obstacle or obstruction."

25.     33 CFR § 322.2 defines "work" as including, without limitation, "any dredging or disposal or dredged material, excavation, filling, or other modification of a navigable water of the United States."

26.     33 CFR § 322.2 defines "navigable waters of the United States" generally as "those waters of the United States that are subject to the ebb and flow of the tide shoreward to the mean high water mark, and/or are presently used, or have been used in the past, or may be susceptible to use to transport interstate or foreign commerce."

## GENERAL ALLEGATIONS

### The Site

27.     The real property that is the subject of this Complaint is comprised of portions of two contiguous tax parcels identified as Block 8202, Lot 4 and Block 8301, Lot 1 ("Byrd Parcels") and a portion of a tax parcel identified as Block 8301, Lot 2 ("NJDEP Parcel"), collectively the "Site."

28.     The Byrd Parcels consist of 175.15 acres and are generally bounded by Mays Landing-Somers Point Road and private property to the east, Betsy Scull Road and private property to the north, the Great Egg Harbor River to the west, and private property, the NJDEP Parcel, and the Atlantic City Electric Powerline Easement to the south.  The Byrd Parcels are depicted in blue on **Exhibit 1**.

29.     The NJDEP parcel consists of 15.64 acres and is generally bounded by the Great Egg Harbor River to the west, the Byrd Parcels to the north, and other private property to the south and east.  A portion of the Atlantic City Electric

7

Powerline Easement is also located on the NJDEP Parcel.  The NJDEP Parcel is depicted in red on **Exhibit 1**.

30.     At all times relevant to this Complaint, Byrd owned the Byrd Parcels.

31.     Upon information and belief, the State of New Jersey currently owns the NJDEP Parcel.

## Aquatic Features Associated with the Site

32.     The Byrd and NJDEP Parcels are located adjacent to the Great Egg Harbor River (**Exhibit 1**).

33.     The Great Egg Harbor River is a navigable waterway subject to the ebb and flow of the tide from the dam on Lake Lenape in Mays Landing, New Jersey, to the Great Egg Harbor.  Additionally, the Great Egg Harbor River has been used in the past and is used in the present for the purposes of interstate commerce.  The wetlands on the subject property are adjacent to and contiguous with the navigable portion of the Great Egg Harbor River.

34.     The Great Egg Harbor River was designated a Wild and Scenic River pursuant to the Wild and Scenic Rivers Act, 16 U.S.C. § 1271 et seq., in 1992.  The Byrd Parcels are located along the section of the Great Egg Harbor River that is classified as a Scenic River.

35.     The location and extent of aquatic resources on the Byrd and NJDEP Parcels were estimated by USACE personnel based on review of aerial imagery, the published National Wetland Inventory (NWI) data (**Exhibit 2**), and site investigations.

36.     Aquatic resources on the Byrd and NJDEP Parcels include the tidal waters of the Great Egg Harbor River and its tidal tributaries.  These tidal waters are mapped on NWI data maps as estuarine subtidal waters with an unconsolidated bottom (**Exhibit 2**).  Contiguous with these tidal waters are estuarine intertidal emergent wetlands (tidal marsh) grading contiguously into non-tidal scrub/shrub and forested wetlands.  The wetlands on the Byrd and NJDEP Parcels that are contiguous with the tidal waters of the Great Egg Harbor River constitute adjacent wetlands as defined at 33 CFR § 328.3(c) and waters of the United States.

37.     Adjacent wetlands on the Byrd and NJDEP parcels that begin within 1000 feet of the mean high water line of the Great Egg Harbor River and its tidal tributaries remain subject to Corps of Engineers jurisdiction, and are not assumed by the State of New Jersey in accordance with CWA Section 404(g)-(l), 33 U.S.C. § 404(g)-(l).

## Enforcement History

38.     On November 2, 1998, in response to a report by the National Park Service (NPS) of a possible violation on Byrd's property, USACE opened an enforcement investigation.  During the investigation, USACE identified through aerial photography unauthorized work that had been performed in areas subject to Federal jurisdiction on the Byrd Parcels.

39.     The unauthorized work included mechanized land clearing, including the redistribution of material and the discharge of dredged and/or fill material to construct and berm a pond in a wetland, identified as Area "A-1" on **Exhibit 3** to

this Complaint; the discharge of dredged and or fill material in waters and wetlands to construct an approximately 1000-foot long road to the Great Egg Harbor River and mechanized land clearing and the discharge or dredged and/or fill material to construct a vehicle turn-around and beach in waters and wetlands at the end of the unauthorized road, identified as Area "E" on **Exhibit 3** to this Complaint; and mechanized land clearing and pushing material into waters and wetlands to construct a home site.

40.     USACE sent Byrd a Cease and Desist Order on May 23, 2000.

41.     Shortly after the May 23, 2000 Cease and Desist Order was issued, Byrd agreed to remove and restore portions of the unauthorized work and to apply for an after-the-fact (ATF) permit for the remaining work.  Portions of the unauthorized work were restored under the oversight of USACE staff.

42.     On November 6, 2000, USACE received an ATF permit application and a signed Tolling Agreement from Byrd.

43.     From November 6, 2000 to January 31, 2007, USACE engaged in extensive coordination with Byrd, Byrd's agents, and natural resources agencies to ensure that sufficient information was received for a complete application, to publish a public notice, to evaluate the application, and to explore alternative permitting options.

44.     On June 13, 2007, after thorough review and coordination, USACE Philadelphia District denied Byrd's ATF permit application with prejudice, since it was determined that the completed and proposed work would have an unacceptable

10

adverse impact on the aquatic ecosystem and would not reflect the national concern for both the protection and utilization of important national resources.

45.     In the letter denying his ATF permit application, Byrd was directed to remove and restore the remaining areas of unauthorized work in accordance with USACE's Removal and Restoration Guidelines unless he successfully appealed the decision to deny his permit application to the USACE North Atlantic Division.

46.     On August 8, 2007, Byrd appealed the USACE Philadelphia District's decision to deny his permit application.

47.     On May 2, 2008, the USACE North Atlantic Division determined that Byrd's reasons for appeal had no merit.

48.     Byrd failed to restore the areas of unauthorized work identified in areas "A-1" and "E" on **Exhibit 3**.

### Current Enforcement Action

49.     On July 14, 2014, USACE received a complaint about additional unauthorized discharges on the Byrd Parcels from the New Jersey Department of Environmental Protection (NJDEP).

50.     Using aerial photography and previous knowledge of the site, USACE identified multiple possible new violations of Section 10 of the Rivers and Harbors Act of 1899 and Section 301 of the Clean Water Act.

51.     On April 13, 2015, USACE issued Byrd a Cease and Desist Order.

52.     In the Order, USACE asked Byrd for permission to visit his property to delineate the limits of areas subject to Federal jurisdiction, verify the extent of the

additional unauthorized work previously identified using aerial photography, and to identify any corrective measures needed to eliminate current and future detrimental impacts resulting from the unauthorized work.  Byrd repeatedly refused the USACE's request for site access.

53.     Following the receipt of a notice from NJDEP threatening to assess an administrative penalty, Byrd agreed to a meeting with the NJDEP and the USACE on December 6, 2016.

54.     Following the meeting, Byrd relented, allowing a combined site inspection by the NJDEP, USACE, and the National Park Service (NPS) on January 31, 2016, February 1, 2017, and February 2, 2017.  Further investigation of possible additional unauthorized work performed by Byrd on adjacent property (Block 8301, Lot 3) owned by Dr. and Mrs. Jerry Atkins, New York, New York, was conducted by the USACE on April 10, 2017.

### Unlawful Discharges of Fill Material at the Site

55.     Review by the USACE of recent and historic aerial imagery including Light Detection and Ranging (LIDAR), site inspections, wetland delineation, and on-site surveying revealed that new unauthorized work had been performed in areas subject to Federal jurisdiction.  Upon information and belief, this new unauthorized work was performed by Byrd and/or persons acting on his behalf or at his direction.

56.     USACE found that portions of the new unauthorized work, i.e., excavation of a pond in tidal marsh on Block 8301, Lots 1 and 2, and side-casting

the excavated material back into tidal wetlands, had actually been performed between March 2004 and October 2006, during the time that the USACE was reviewing the Byrd's ATF permit application. Byrd's ATF permit application did not include that pond construction work. This area is identified as Area "A-2" on **Exhibit 3** to this Complaint.

57.     Between March 31, 2009 and December 31, 2009, Byrd and/or persons acting on his behalf or at his direction further excavated the pond on Block 8301, Lots 1 and 2 to enlarge it, and discharged (side-casted) the excavated material back into the tidal marsh to convert the marsh to uplands and to create berms. This area is identified as Area "A-3" on **Exhibit 3** to this Complaint.

58.     Between March 2007 and December 31, 2009, Byrd and/or persons acting on his behalf or at his direction discharged dredged and/or fill material into wetlands to construct a road that also functioned as a berm on Lot 4, Block 8202, and, between March 31, 2009 and December 10, 2010, discharged dredged and/or fill material into tidal wetlands and a tidal tributary to the Great Egg Harbor River to create an earthen dam/road crossing obstructing navigable waters (**Exhibits 4 and 5**). Byrd and/or persons acting on his behalf or at his direction also installed a drainage control structure within the obstructive earthen dam to allow manipulation of water levels behind the dam. This area is identified as Area "B" on **Exhibit 3** to this Complaint. The unauthorized road/berm and drainage control structure in Area "B" functioned as an earthen dam that backed up flow into approximately 15+ acres of a large scrub/shrub and forested wetland area on Lot 4,

Block 8202 (**Exhibit 6**).  This area is identified as Area "C-1" on **Exhibit 3** to this Complaint.

59.     As drainage backed up in Area "C-1" behind the earthen dam at Area "B," flooding weakened or killed the trees and shrubs within the flooded area, many of which were subsequently knocked over or had fallen over by early 2013 (**Exhibit 7**).

60.     Starting in early 2013, Byrd and/or persons acting on his behalf or at his direction drained Area "C-1" and cleared a large portion of the forested and scrub/shrub wetlands of trees (including downed trees) and shrubs.  Large piles of trees, brush and likely stumps that were cleared were placed or pushed up into piles in the cleared wetlands in violation of Section 301 of the Clean Water Act before being removed in 2014 and early 2015 (**Exhibits 7 and 8**).

61.     After Area "C-1" had been cleared, a pipe was constructed to convey water from the cleared area, traveling under Byrd's paved driveway, and discharging into the unauthorized pond constructed next to Byrd's house, identified as area "A-1" on **Exhibit 3**.

62.     Between May and June 2015, Byrd and/or persons acting on his behalf or at his direction again closed the water control structure in the earthen dam to pond approximately 15+ acres of Area "C-1" (**Exhibit 8 and Exhibit 3**).  Between June 2015 and July 2016, Byrd and/or persons acting on his behalf or at his direction discharged dredged and/or fill material into wetlands to construct an earthen berm, identified as Area "C-2" on **Exhibit 3** to this Complaint, to contain

water in Area "C-1." The ponding in Area "C-1" and the alteration of drainage from Area "C-1" through the pipe to the unauthorized pond next to Byrd's house in Area "A-1", is an on-going result of the unauthorized work at Areas "C-2" and "B."

63.     Between 2007 and March-April 2012, Byrd and/or persons acting on his behalf or at his direction discharged additional fill material, including, after June 1, 2011, what is believed to be milled asphalt, into waters of the United States below the high tide line of the Great Egg Harbor River and its tidal tributaries. These unauthorized materials were discharged onto the unauthorized fill that had previously been placed into tidal wetlands below the high tide line to construct an unauthorized roadway to the river. This unauthorized roadway stretches for more than 1000 feet. Additional material was also discharged onto the unauthorized turn-around and beach on Lot 1, Block 8301. Byrd's maintenance of this unauthorized road by placement of additional fill material below the high tide line continued even after being denied a permit for the road and beach in 2007. Additional milled asphalt was again placed below the high tide line of the road between 2013 and 2016. This area is identified as Area "E" on **Exhibit 3** to this Complaint. Most of the milled asphalt was scraped off of the road by Byrd and/or persons acting on his behalf or at his direction just prior to the Corps' site inspection in early 2017, but some of fill material still remains in waters of the United States.

64.     Between March 24, 2013 and October 5, 2014, Byrd and/or persons acting on his behalf or at his direction excavated and discharged (side-casted)

15

dredged material in wetlands to construct berms creating two new ponds in wetlands contiguous to the tidal waters of the Great Egg Harbor River on Lot 4, Block 8202; Lot 1, Block 8301; and Lot 2, Block 8301. These areas are identified as Areas "F" on **Exhibit 3** to this Complaint.

65.    During the Corps' inspection of work performed on the adjacent Atkins property (Block 8301, Lot 3) on April 10, 2017, Corps staff identified additional drainage pipes (**Exhibit 9**) that Byrd and/or persons acting on his behalf or at his direction had constructed to drain the unauthorized pond next to Byrd's house, identified as Area "A-1" in **Exhibit 3**, to the unauthorized tidal marsh ponds, identified as Areas "F" in **Exhibit 3**. When asked about the pipes, Byrd indicated that he wished to keep the pipes in place and conveying water to prevent the ponds from getting stagnant.

66.    Upon information and belief, Byrd and/or persons acting on his behalf or at his direction used earth-moving equipment to transport and then discharge the dredged or fill material as described above.

67.    Byrd did not obtain a permit from the Secretary of the Army, acting through the Chief of Engineers, for the discharges of dredged or fill material described above as required by CWA Sections 301(a) and 404, 33 U.S.C. §§ 1311(a), 1344.

## Unauthorized Obstructions to and/or Alterations of Navigable Waters of the U.S.

68.    Between March 31, 2009 and December 31, 2009, Byrd and/or persons acting on his behalf or at his direction constructed an unauthorized floating dock in

the tidal waters of the Great Egg Harbor River.  This area is identified as Area "D" on **Exhibit 3** to this Complaint.

69.     The dock construction took place after Byrd's after-the-fact permit application requesting a dock was denied in 2007.

70.     The dock was removed for a time in 2011, but was once again installed in 2012 and remained through 2016 when it was again removed prior to the site inspection by the USACE and the State.

71.     As identified in Paragraph 58 above, Byrd and/or persons acting on his behalf or at his direction also filled and obstructed navigable waters to construct an earthen dam/road crossing and drainage control structure in Area "B" on **Exhibit 3** to this Complaint.  This unauthorized work obstructed the flow and altered the circulation of navigable waters at and upstream of the earthen dam.

## COUNT ONE:  UNAUTHORIZED DISCHARGES OF DREDGED OR FILL MATERIAL

72.     The United States repeats and re-alleges the allegations set forth above.

73.     The tributaries and wetlands referenced above are "waters of the United States" under CWA Section 502(7), 33 U.S.C. § 1362(7).

74.     The earth-moving equipment described above constituted a "point source" as defined in CWA Section 502(14), 33 U.S.C. § 1362(14).

75.     The discharges of dredged or fill material described above violated and continue to violate CWA Section 301(a), 33 U.S.C. § 1311(a).

17

76.     Each day that the dredged or fill material described above remains in the wetlands constitutes a separate violation of 301(a), 33 U.S.C.  CWA Section 309(d), 33 U.S.C. § 1319(d).

77.     Pursuant to CWA Sections 309(b) and (d), 33 U.S.C. §§ 1319(b) and (d), and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, Byrd is liable for a civil penalty of up to $32,500 for each day of each violation of CWA Section 301(a), 33 U.S.C. § 1311(a), described above.

## COUNT TWO: CREATING AN OBSTRUCTION TO NAVIGATION AND ALTERING A NAVIGABLE WATER

78.     The United States repeats and re-alleges the allegations set forth above.

79.     The floating dock and mooring piles described above that were constructed by Byrd and/or persons acting on his behalf or at his direction within the Great Egg Harbor River constitute "structures," as that term is defined in 33 CFR §322.2(b).

80.     The Great Egg Harbor River is a "navigable water of the United States" as that term is defined in 33 CFR §322.2(a).

81.     Tidal tributaries to the Great Egg Harbor River, to the mean high water mark, are also "navigable waters of the United States" as that term is defined in 33 CFR §322.2(a).

82.     While the floating dock has since been removed, its construction absent a Department of the Army permit is a violation of RHA Section 10, 33 U.S.C. § 403.

83.    The discharge of dredged and/or fill material into a "navigable water of the United States" to construct the earthen dam and water control structure constitutes "work" in or affecting navigable waters as that term is defined in 33 CFR §322.2(c).  Absent a Department of the Army permit, the work is a violation of RHA Section 10, 33 U.S.C. § 403.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court order the following relief:

a)    Require Byrd to remove the dredged and/or fill materials or structures at Area "B" and Area "C-2" that are blocking the natural drainage in Area "C-1" to prevent further adverse impacts due to flooding.

b)    Permanently enjoin Byrd from discharging or causing the discharge of dredged or fill material or other pollutants into any water of the United States except in compliance with a CWA permit;

c)    Permanently enjoin Byrd from creating an obstruction to or altering navigable waters of the United States;

d)    Order Byrd to undertake measures, at Byrd's own expense and at the direction of USACE, to effect complete restoration of the waters of the United States at the Site and to conduct on-site and off-site mitigation for unauthorized impacts to waters of the United States, as appropriate;

e)    Order Byrd to remove, at Byrd's own expense and at the direction of USACE, all obstructions to the navigable waters to the United States;

f)      Order Byrd to pay civil penalties, pursuant to CWA Section 309(d), 33 U.S.C.

        § 1319(d), for each day of each violation of CWA Section 301(a) and Section

        308;

g)      Order Byrd to comply with the CWA and its implementing regulations;

h)      Order Byrd to comply with the RHA and its implementing regulations;

i)      Award the United States costs and disbursements in this action; and

j)      Grant such other relief as the Court may deem just and proper.


                                Respectfully submitted,

                                CRAIG CARPENITO
                                United States Attorney


                        By:     ALLAN B. K. URGENT
                                JESSICA O'NEILL
                                Assistant United States Attorneys


Dated:

Of Counsel:

John F. Kasbar, District Counsel
Amanda Phily, Assistant District Counsel
U.S. Army Corps of Engineers



EXHIBIT 1

**Byrd Thomas J Jr. AT
CENAP-OP-R-2014-1001
LOT 4, BLOCK 8202 &
LOT 1, BLOCK 8301
Egg Harbor Township
Atlantic County, NJ**



LOT: 1  BLOCK: 8202

PFO1/4B

UPLANDS

PFO1/4B

LOT: 2  BLOCK: 8202

FORESTED AND
SCRUB/SHRUB WETLANDS

LOT: 5  BLOCK: 8202

PFO4/3B
PALUSTRINE
FORESTED WETLANDS

LOT: 6  BLOCK: 8202

PSS1E
PALUSTRINE SCRUB/
SHRUB WETLANDS

LOT: 4  BLOCK: 8202

GREAT EGG HARBOR RIVER

PSS4E

PFO1/4E

UPLANDS

E2EM1Pd
LOT: 3  BLOCK: 54

TIDAL MARSH

E1UBL
ESTUARINE
SUBTIDAL
WATERS

E2EM5/1Pd
ESTUARINE INTERTIDAL
WETLANDS

PFO1/4B

LOT: 1  BLOCK: 8301

E1UBL

LOT: 3  BLOCK: 8301

E2EM1Pd.

TIDAL
WATER

UPLANDS

LOT: 1  BLOCK: 56

Plan prepared by Mr. Kevin F. Maley, USACOE, on August 16, 2016 based on NWI geospacial data, aerial imagery
dated 2002, 2004, 2006, 2007, 2009, 2010, 2011, 2012, 2013, 2014, 2015, and 2016, and using ArcMap 10.3

LOT: 2  BLOCK: 8301

NATIONAL  WETLANDS  INVENTORY  (NWI)
GEOSPACIAL  DATA  MAP

0   75  150      300       450       600
Feet

Date of aerial imagery: Mar - May 2015 and June 21, 2015.

EXHIBIT 2

Byrd Thomas J Jr. AT
CENAP-OP-R-2014-1001
LOT 4, BLOCK 8202 &
LOT 1, BLOCK 8301
Egg Harbor Township
Atlantic County, NJ

GREAT EGG HARBOR RIVER

N

**AREA "B"**
An earthen dam and road crossing was constructed in wetlands and a tidal tributary of the Great Egg Harbor River, obstructing tidal flow and impounding water in a 15.36 acre pond within Area "C" wetlands. This work was performed between March 31, and December 31, 2009.

**AREA "C-1"**
Mechanized land clearing of trees and shrubs and the redistribution of material in a 15.36 acre tidal emergent, scrub-shrub, and palustrine forested wetland.  The 15.36 acre area was then flooded to construct a pond. Mechanized land clearing was performed between February 2013 and May 2015.

**AREA "B"**
Waters of the U.S., including wetlands, filled for a road crossing.  The fill also acts as a berm to contain the water within the Area "C" pond.  Work performed between March 31 and December 31, 2009.

**AREA "C-2"**
Dredged and/or fill material discharged into waters of the U.S., including wetlands as a berm to contain water in the pond created in Area "C". This material was placed between June 21, 2015 and July 22, 2016.

**AREA "E"**
Waters of the U.S., including tidal wetlands were filled to construct a road to the Great Egg Harbor River and a turnaround between 1995 and 2007.  Additional material, including milled asphalt, has periodically been placed on the road below the high tide line between June 2007 and March 2013, and between March 2013 and 2016, to maintain the road and the turn-around.

**AREA "A-1"**
Pond constructed by mechanized land clearing of scrub-shrub wetlands between 1995 and 2002.  Dredged and/or fill material was sidecasted into wetlands to create berms.

**AREA "D"**
Floating dock and mooring piles constructed in the Great Egg Harbor River between March 31 and December 31, 2009. The dock was removed for a time in 2011, but was once again installed in 2012 and remained through 2016 when it was again removed.

**AREA "A-2"**
Pond excavated and dredged and/or fill material sidecasted into wetlands between March 2004 and October 2006.

**AREA "A-3"**
Unauthorized pond in marsh enlarged and additional dredged and/or fill material sidecasted into wetlands between March 2009 and December 2009.

**EXHIBIT 3**

**Byrd Thomas J Jr. AT CENAP-OP-R-2014-1001 LOT 4, BLOCK 8202 & LOT 1, BLOCK 8301 Egg Harbor Township Atlantic County, NJ**

Plan prepared by Mr. K. Maley, USACOE, on December 8, 2017 based on aerial imagery dated 1995, 2002, 2004, 2006, 2007, 2009, 2010, 2011, 2012, 2013, 2014, 2015, and 2016, LIDAR data dated 2010, and site inspections January 31 and February 1 & 2, 2017, using ArcMap 10.4.1.

**AREAS "F"**
Linear ponds excavated into tidal wetlands and dredged and/or fill material sidecasted into waters and wetlands to create berms between March 24, 2013 and October 14, 2014.  Subsurface pipes connect tidal flow between these ponds.

0   100  200   300     400      600       800
Feet

Date of NJDEP InfoWarehouse false-color infrared aerial imagery: Mar-May, 2015



Aerial imagery indicates that there was no dam or road crossing existing prior to the construction of an earthen dam in mid to late 2009 by the Defendant or others acting in his stead or at his direction.
(The yellow arrow identifies the location of the earthen dam.)

**EXHIBIT 4**



In mid to late 2009, Defendant constructed an earthen dam in tidal wetlands and navigable waters
of the U.S., flooding 15+ acres of a partially tidal scrub-shrub and palustrine forested wetland area.
(The yellow arrow identifies the location of the earthen dam.)

**EXHIBIT 5**



October 2006

12/11/2010

© 2010 Pictometry

Partially tidal scrub/shrub and palustrine forested wetland area "C-1" in 2006. The yellow arrow shows the location where an earthen dam will be constructed in 2009.

An earthen dam constructed by Mr. Byrd in mid to late 2009, backed up drainage, flooding a large, partially tidal scrub-shrub and forested wetland area "C-1", weakening and killing many trees and shrubs.

**EXHIBIT 6**



© 2013 Pictometry

03/13/2013

03/08/2016 *(Probably 03/08/2015)* © 2016 Pictometry

Weakened and dead trees in area "C-1" were vulnerable to storm throw and by March 2013, most of the dead trees within the flooded area had fallen or been knocked over. In early 2013, Mr. Byrd began clearing the flooded wetland area of dead (and some living) trees and shrubs by mechanized land clearing. The trees and brush were pushed up into large piles, and the clearing of the wetland continued using heavy equipment into 2015.

**EXHIBIT 7**



**March-May 2015**                    **June 21, 2015**

Following the completion of clearing in the spring of 2015, drainage within the cleared area was
again blocked, allowing the 15+ acre cleared area to back up drainage creating a 15+ acre pond.

**EXHIBIT 8**



Approximate locations of pipes ➤ conveying newly directed drainage through ponds.

**EXHIBIT 9**

JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a)  PLAINTIFFS

**DEFENDANTS**

**(b)**  County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
       Plaintiff

☐ 3   Federal Question
       *(U.S. Government Not a Party)*

☐ 2   U.S. Government
       Defendant

☐ 4   Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 340 Marine | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1   Original
       Proceeding

☐ 2   Removed from
       State Court

☐ 3   Remanded from
       Appellate Court

☐ 4   Reinstated or
       Reopened

☐ 5   Transferred from
       Another District
       *(specify)*

☐ 6   Multidistrict
       Litigation -
       Transfer

☐ 8   Multidistrict
       Litigation -
       Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____